May it please the Court, my name is Thomas Perkinson. I represent the petitioner Israel Charco-Silva. In this case, the BIA made two errors. In this case, the BIA made two errors. The first error was that it made a finding of fact that my client was gone from the United States for more than 90 days during the 10 years he had to be here. The second error the BIA made was after it reversed the IJ's finding on that same issue on the 10 years physical presence, it did not remand the case to the IJ for further fact finding. Both of those are errors of law that this Court has jurisdiction to review. The reason that the BIA erred as to the clear error review is that there's enough evidence on this record for the immigration judge to have found that my client was not gone from the United States for more than 90 days. At one point, my client testified he was gone for 18 days. That clearly does not exceed 90 days. It doesn't break his physical presence. At a second hearing, he testified that he was gone for four months. At that same hearing, he testified that he was just thinking and speaking aloud. Shortly before, he said he was gone for four months. So there is a contradiction in the record. However, apparently the immigration judge credited my client's testimony that he was gone for 18 months. The IJ didn't even refer to the others, so there's no articulation by the IJ as to why these are the errors. Kennedy, I'm sorry to interrupt you, but you said that the BIA erred over the other. So your point is that what the BIA should have remanded back to the IJ to explain it? Well, yes. If they – if, in fact, they did not err and that they did conduct a clear error review, then they should have remanded. So if the Court finds that the immigration judge simply never made a factual finding on how long my client was gone, it can also be argued that the immigration judge made an implicit finding that he hadn't been gone for more than the 90 days. But if there's no finding, then the immigration – the BIA didn't have the right to make a finding, and it should have been remanded to the immigration judge. I think it would be – I appreciate the dilemma, but I read the IJ's statement, and then the BIA's looking at it, and it says, wait a minute, it's flat out on the record that your client said four months. And so it would be hard to read into the IJ as making an implicit finding on such a critical point when they're just flat-out contradictions. So I take your point about remanding back to the IJ. I have trouble with saying we should say that they erred because she must have – the IJ must have made an implicit finding. It seems to me that would be asking a lot for the BIA to be bound by that. Well, there are two different things that he said. And the BIA credited one, the IJ apparently credited the other. And why is not exactly clear. But there are also documentary evidence in the record. The son, the U.S. citizen's son, Diesel, for one thing, he had been born the October of – October of 94, two months before he supposedly left in 94. And is he really going to leave that son there for four months, a newborn with a wife that doesn't work? That's an inference that the immigration judge could have drawn and that the BIA didn't address. And under – Was there other evidence in the record supporting one timeframe versus the other? Well, besides the testimony, Your Honor, there is – there are Diesel's medical records. And Diesel's medical records show that he went to the doctor on December 28th, 94, which is at the very end of December. And then again on January 18th. And then again in February, March, April, and May. Those medical records are at – in the record at 394. So his – his child was here in the United States going to the doctor. Apparently he needed to be the one to take him to the doctor. So that's another document that's in the record that's uncontradicted from which the immigration judge could have drawn an inference that, no, I'm going to credit the 18 days instead of the four months. You're arguing in this case that this were an appeal from the original ruling, but this was a motion for reconsideration, aren't we? Well, the legal – I mean, the time to have argued these issues was after the first BIA remand. Well, when the BIA remanded, it specifically noted that there was no final order entered, and it remanded in part for that purpose. And this court has held in Ocampo that when there's a voluntary departure order, the order is final when it gets back to the BIA and the BIA affirms it. That's one way to look at it. The other way to look at it is that to the extent that this is a procedural due process claim, my client had to raise that with the agency first. He had to say, hey, you made a mistake. You should have sent this back to the judge. He can't bring that up in the first instance in this court. Beyond that, what we're talking about here is did the BIA use the correct – Well, he could have done that after the first remand. He could have moved for reconsideration saying in the agency at that time and say the remand order is wrong. But at this point, you're stuck with the fact that he went back, and now it's your – so the standard we have to apply is a reconsideration standard, which is abuse of discretion. Well, part of the problem is that it went back to the IJ, but then the IJ never said it for a hearing. She just issued a written decision, so he never got a chance to go back to the IJ. But assuming – I mean, to address your point that it's a motion to reconsider, even so, it's a legal issue whether the Board of Immigration Appeals used the correct legal standard, clear error. And so part of the argument is that they didn't review this for finding. So that's a legal error that you do have – this Court does have jurisdiction to review. Well, we have a jurisdiction to review a motion for reconsideration as well. The question is the standard by which we review it. Well, that's de novo. It's a legal issue, so it would be a de novo standard. Not a reconsideration, would there be? Yes, certainly. If there's a failure to follow its own regulations, it's still a legal error. I'm sorry. And when do you think the failure was? The BIA failed to follow the regulations and its own case law, matter of SH, in which it – At what point in time? Well, when it was – when it was – He was here twice. Let me give you a choice. Let's just make it easy. The first time or the second time? The second time, it reviewed for clear – the second time, it refused to remand. The first time, it reviewed for clear – it purportedly reviewed for clear error and also refused to remand. You claim there was a – there was the non-due process. Did it happen the first time or the second time? I'm trying to just pinpoint when it is you claim that. It happened when there was a final order where he was no longer able to present that evidence. It happened – I'm sorry. Is first time or second time not sufficiently clear? Is it the first time or the second time? Your Honor, it happened – He was there twice. It happened both times because both times the board refused to remand it for factual finding to correct the error it had made. And he made the – he made the argument both times to the board. I think my judge, because as he may be asking, which is what I was trying to understand too, because the way the board phrases it, they say, a motion to reconsider shall state the reasons for the motion by specifying the errors of fact or law in the prior board decision and shall be supported by pertinent authorities. So is that the standard? That's the standard the BIA says? That's the standard for a motion to reconsider, correct. Okay. So you're saying that you pointed out an error of law because they – the BIA implied – the BIA didn't apply the clearly erroneous standard to the finding of fact in the first BIA decision. And that's the error of law that you pointed out before the second BIA decision. That's correct. But also the BIA failed to remand in the second decision as well. I would refer the court to its decision in Brazilian. In that case, the case went from the IJ to the BIA to the IJ to the BIA to the IJ to the BIA to the IJ. And this court decided that all of the decisions of the BIA were before it at that point. When you read the first BIA decision, it's not an order that tells my client he has to leave. When you consider what a final order is, you should – you obviously have to go with the statute, but you also should consider what will the immigrant think this means. If the case is being sent to the immigration judge and the remand was not limited, it wasn't limited to simply – Well, wait a minute. He was told to leave. The question is whether he'd get voluntarily or whether he's going to be deported. Well, when the case was remanded, it wasn't remanded in a limiting way. It was open for the judge to make a new fact-finding. Had it been scheduled for a hearing, the judge could have made an additional fact-finding on physical presence that was still consistent with the first BIA decision. So the matter really wasn't completed until the 2008, the second decision. And the violation of the regulations, it occurred both times, Your Honor. Okay. Thank you. We'll hear from the other side. Good morning, Your Honor. May it please the Court, Dan Shea on behalf of the United States Government. Glad to see the government is saving money by having you argue more than one case this week. Thank you, Your Honor. The only question before the Court this morning in this case is whether the Board abused its discretion in denying the Petitioner's motion to reconsider, whether the Board found clear error in the IJ's decision that he met the tenure continuous presence requirement. If it pleases the Court, conflicting evidence simply can't satisfy the Petitioner's burden of evidence was whether the Petitioner returned to Mexico for 18 days in 1995 as he testified or four months from 1994 to 1995 as he also testified. The latter meaning that he can't satisfy the tenures of continuous presence. I have just three points to make to the Court this morning. First, this conflict is real and it's significant. Second, because of this conflict, he can't meet his burden of proof. And third, he wasn't denied due process. So let me just address these in order. First, the conflict is real and it's significant. It isn't simply a matter of misspeaking. There's nothing in the record that there was a translation error. And in fact, he was asked several questions following his statement that he had been in the United States for four months. He was asked, When did you leave? He said, December of 94. Then he was asked when he was asked at the outset, Well, why did you leave? And he said he had to visit his parents that he hadn't seen in a very long time. But at an earlier hearing, he stated that he left for 18 days and it was in 95 and that it was because his mother was very sick. These two statements are clearly contradictory. Also, it should be noted, second, that the burden of proof isn't met in this case. This isn't an adverse credibility case. So the Board never found that because he was inconsistent here, he was not credible about anything else. No one found he was adverse. I mean, it seems to me that we're missing a finding of fact. Like, which one was it? I mean, I guess the question is, did the I.J. implicitly find 18 days? Because he couldn't have granted cancellation without finding 18 days. Correct, Your Honor. And the I.J., unfortunately, in the I.J.'s decision, there was just nothing on which one the I.J. was crediting. The I.J. acknowledged that in the facts, but if you read the reasoning section of the I.J.'s decision, the I.J. simply says he met the 10-year continuous presence requirement with no analysis of these two clearly conflicting statements. So why wouldn't the Board's role then be to, under its own rules, remand for a factual determination by the I.J.? Because in this case, finding clear error, crediting his own testimony, the Well, but isn't the normal rule is, if there's a conflict or there's an inconsistency, the immigrant is supposed to be confronted with it and asked to explain, and then the I.J. will make a determination as to whether the I.J.  Yes, Your Honor. There's no such confrontation on this. There's two different statements, but obviously the I.J. based the decision on the 18-day testimony. Now, we don't know why, and we don't have any explanation on the record to base anything on, nor did the BIA have anything, so I don't understand why it wouldn't be appropriate to remand to the I.J. and say, did you just make a mistake or was there something that not included it in your opinion, and maybe you ignored the fact that he had this conflict, or maybe you addressed it but resolved it the way you did. As we noted in our response brief, there's several answers to that. One, this isn't an adverse credibility finding, and so there's not the similar duty of confrontation in this case. Also, if you read the transcripts, the question was pretty lengthy as to how long he was gone for, for four months, and the whole time it was as to whether or not he satisfied the requirement for cancellation, and he provided no explanation there or at the conclusion of his hearing as to why he said four months versus 18 days. So, therefore ---- Kennedy, was there a question posed just in those terms? You said 18 days, but then you now said four months or vice versa? Was that ever presented to him? That specific question was not posed, Your Honor. Yes. That's the point. Right. But throughout the entire proceedings, the Petitioner was represented by counsel, and these two ---- I understand, but there was an I.J. there who was presiding over this proceeding, and, you know, the BIA is looking at the same record we're looking at, quite frankly, and so the question is, if there's a conflict, wouldn't it be the I.J. in the first instance who would address it and resolve it, since the I.J. adopted the 18 days? This isn't a case where they're coming in and arguing that the I.J. made an error in denying cancellation. It's the BIA who did it, and they're not a fact-finder. Right, Your Honor. And in addition to what I've already said, he never raised that specific argument to the Board that the I.J. didn't give him a chance to explain the discrepancy in his testimony. He never requested a remand for that brief. So perhaps that could have been a reason why the Board would have remanded if he had requested it for that purpose. But not only that, as we also argued in our brief, there's no prejudice. So throughout the time he was both before the I.J. and then in his appeal brief, and now even in his opening brief, he provides no explanation or even a suggestion as to how this discrepancy can be reconciled. This discrepancy is clear. It's substantial because it goes to whether he gets the relief at all. And there's just nothing in this record to say how this can be reconciled. Well, that's what we're all searching for, right? That's what we want to know. I'm just curious. I mean, this particular petitioner fits the Martin memo with U.S. citizen children and no criminal history and everything. I'm just wondering, have you made any attempts to mediate this? Or were we talking to you about the difference between deferral and no, maybe we weren't. You were not talking to me, but if you have a question about that, I'm happy to answer that. Yeah. I want to know whether it's possible to mediate this particular petition given the other equities. So, Your Honor, I have spoken to opposing counsel about this. And I spoke to the briefing attorney about this case as well. This case was in mediation for two years. It was. Yeah. It was in mediation predating the Morton memo. It was started in July of 2009. I don't know why it was placed in mediation. The attorney who placed it in mediation initially now is an ALJ. So I can't call her. But as far as I can tell from the record, just looking at the PACER docket and speaking with Mr. Wisecup, who was the previous attorney, this case was considered for prosecutorial discretion. And I don't know exactly the reasons why DHS declined. They're not but there are criminal convictions in the record. So he has multiple criminal they're old. So I don't think they're a per se bar, but it would be rational for the Department of Homeland Security to deny a prosecution. I think there's one for a DUI conviction and one for a petty theft conviction as well. Well, now that we have new counsel on both sides, would you be opposed to an order talking to each other with the Ninth Circuit mediator? We can certainly talk. The Justice Department can't grant prosecutorial discretion, as I'm sure Your Honor knows. It's the local chief counsel's office that does that. And so I've already spoken with the opposing counsel and if he can secure prosecutorial discretion from the OCC, the Office of Chief Counsel in Los Angeles, we'd certainly be open to that. But right now there's nothing before us. And because this case has already been mediated and the notes from the previous attorneys seem to suggest that it's already been declined, there's just not much that we can do on that end. It just seems to me that when the BIA, it seems to me the BIA didn't follow its own rules here because it made its own finding of fact. It didn't say that the IJ was clearly erroneous in its implicit finding. It made its own finding of fact. That it was the four months was the more accurate one. And I don't know, maybe the BIA was right, but usually isn't it the IJ who gets to make that determination? Yes, Your Honor. We're not saying was it 18 days or four months. What the board was finding is that because these two statements are there, I mean it could have been both because he said the 18 days was in 95, that's when his mother got very sick, and the four months was from 94 to 95 just to visit his family. So it could have been both. But the point is he's got a burden of proof. The burden of proof is not on the board. And the board wasn't making specific factual findings. It wasn't saying it's four months or 18 days. It was saying we don't know. And by saying we don't know, you haven't met your burden of proof. And because of that, he's ineligible for cancellation. Thank you. Thank you, Your Honor. The case is argued. It stands submitted.
judges: Kozinski, Wardlaw, Fisher